**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**LORI CHAVEZ-DEREMER,**                                                    **PLAINTIFF**
*Secretary of Labor, United States
Department of Labor*


**v.**                                                    **Civil No. 1:26-cv-58-HSO-BWR**


**TANUSHKA, LLC, d/b/a/ HERITAGE
INN, PRATIK AMIN,** *successor***, and
PRATIK PATEL,** *successor and in
their individual capacity*                                **DEFENDANTS**

## ORDER DENYING PLAINTIFF'S MOTION [2] FOR TEMPORARY RESTRAINING ORDER AND FOR PRELIMINARY INJUNCTION WITHOUT PREJUDICE

On February 27, 2026, the United States Secretary of Labor, Lori Chavez-DeRemer, filed a Complaint [1] raising claims under federal law related to Defendants' business practices at "Heritage Inn." *See* Compl. [1]. Plaintiff simultaneously filed an Ex Parte Motion [2] for a Temporary Restraining Order and Preliminary Injunction. *See* Mot. [2]; Mem. [3]. Because Plaintiff has not complied with Federal Rule of Civil Procedure 65(b)(1)(B)'s certification requirement, the Motion [2] will be denied without prejudice.

## I.  BACKGROUND

Plaintiff Lori Chavez-DeRemer, the United States Secretary of Labor (the "Secretary") filed suit against Defendants Tanushka, LLC, d/b/a Heritage Inn ("Heritage Inn"), Pratik Amin, and Pratik Patel (collectively, "Defendants"), under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* ("FLSA"), on behalf of

two employees: Brett Ashley Hayes ("Hayes") and Richard Huber ("Huber").  *See*

Compl. [1] at 1.  According to the Complaint [1], Defendants have violated

numerous provisions of the FLSA by underpaying its employees and engaging in a

campaign of intimidation and retaliation for reporting the violations.  *Id.* at 2.

Defendants own and operate "Heritage Inn," a motel in Picayune,

Mississippi, *id.* at 3, and employ Hayes and Huber, who are engaged to be married

and share a child together, as front-desk clerks at Heritage Inn, Huber Decl. [2-5] at

1.  Defendants hired Hayes and Huber in August 2024, and each were paid $500.00

biweekly and given lodging in exchange for working sixteen hours a day.  *Id.*

Huber's first employment contract provided that he would work "7 days a week

starting at 7 am in the morning to 11pm at the night [sic]" in exchange for "$13,000

a year," "3 days of paid time off per year," and lodging in "Room no. 129."  Dkt. [2-2]

at 1-2 (Huber Contract).   In April 2025, Defendants started to charge Hayes and

Huber rent in the amount of $300.00 biweekly, and when they could not afford the

payments, Defendants terminated their employment and gave them sixteen hours

to vacate the property.  *See* Huber Decl. [2-5] at 2.  In May 2025, Hayes filed a

complaint with the Wage and Hour Division ("WHD") at the Department of Labor

(the "Department"), and in July 2025, the Department began an investigation.  *Id.*

at 2; Compl. [1] at 5.

In July 2025, Defendants rehired Hayes and Huber but reduced their pay to

$125.00 each ($250.00 total) biweekly and once again included lodging.  *See* Huber

Decl. [2-5] at 3.  But soon after, investigators from WHD—acting on Hayes'

complaint—arrived and purportedly discovered "serious but straightforward violations of the Act's minimum wage and overtime provisions." Compl. [1] at 2. After learning of the investigation, Defendants allegedly "embarked on a blatant campaign of interference with the investigation and retaliations against Ms. Hayes and Mr. Huber." *Id.* Plaintiff alleges that Defendants directed Hayes and Huber to "intentionally provide misleading information to the WHD investigator concerning their wages and work schedules," *id.* at 5, took them off site to "interrogate" them about their discussions," *id.* at 6, and attempted to "intimidate" them by suggesting that they "faced the risk of losing their employment and housing," if they cooperated with the investigation, *id.* At the time this case was filed, Huber and Hayes' wages have purportedly been reduced to a mere $47.50 per week (each). *See* Huber Decl. [2-5] at 4. Defendants also apparently harbor disdain for compliance with the FLSA, claiming they would rather "liquidate [their] businesses and return to [their] home country of Canada before [they] pay[] an employee or the [United States] government any money." *Id.* at 5.

Acting under 29 U.S.C. §§ 211(a), 216(b), and 217, Secretary Chavez-DeRemer filed the instant Complaint [1] advancing multiple violations of the FSLA, including claims under 29 U.S.C. § 215(a)(3), the FSLA's anti-retaliation provision (Count I); 29 U.S.C. § 211(a), the FSLA's investigation provision (Count II); 29 U.S.C. § 206(a)(1), the FSLA's minimum wage provision (Count III); 29 U.S.C. §§ 207 and 215(a)(2), the FSLA's overtime provisions (Count IV); and 29 U.S.C. §§ 211(c) and 215(a)(5), the FSLA's recordkeeping provisions (Count V). *See* Compl. [1]

at 9-12.  Simultaneous to filing the Complaint [1], Plaintiff filed an Ex Parte Motion [2] for a Temporary Restraining Order and Preliminary Injunction, seeking to enjoin Defendants from "interfering with the Secretary's investigation and from retaliating against workers."  Mot. [2] at 2.  Plaintiff asks that the Court

> issue a Temporary Restraining Order and Preliminary injunction . . . as follows:
>> 1. Defendants and their agents are enjoined from interfering in any WHD investigation in violation of 29 U.S.C. § 211(a) or retaliating or discriminating against any current or former worker in violation of 29 U.S.C. § 215(a)(3) during the pendency of this litigation; including but not limited to:
>>> a.  Defendants and their agents are enjoined from unlawfully terminating or threatening to terminate Ms. Hayes and Mr. Huber;
>>> b.  Defendants and their agents are enjoined from evicting Ms. Hayes and Mr. Huber from their current housing at the Heritage Inn or imposing further restrictions or conditions on their housing at the Heritage Inn;
>>> c.  Defendants are enjoined from requesting, coercing, or accepting any unlawful "kickbacks," repayments, or deductions of all or part of any employees' wages such that employees' wages are not earned "free and clear";
>>> d.  Defendants are enjoined from unlawfully charging or deducting the cost for lodging from Ms. Hayes' and Mr. Huber's wages;
>>> e.  Defendants and their agents are enjoined from interrogating, inquiring about or discussing with any of their workers or former workers such worker's potential or actual communications with the Wage Hour Investigators or other agents of the Department of Labor; and
>>> f.  Defendants and their agents are enjoined from influencing or attempting to influence any person's testimony or participation in this action.
>>
>> 2.  Defendants and their agents shall allow representatives of the Secretary to post in a visible and accessible location the following statement, to all workers of Defendant Heritage Inn informing them of their right to speak, without retaliation or threats of retaliation or intimidation, with Wage Hour investigators regarding the instant investigation:

4

"You are protected by the Fair Labor Standards Act and have the right to participate freely in the U.S. Department of Labor's investigation and litigation. You have the right to speak freely with investigators, attorneys, or other officials from the Department of Labor. It is illegal for your employer to fire you, withhold wages, reduce your wages or your hours, threaten to call immigration authorities, or otherwise retaliate against you for speaking to the Department of Labor or testifying as a witness for the Department of Labor. All employees have the right to be lawfully paid for the work they perform, regardless of race, ethnicity, or immigration status.

The U.S. District Court for the Southern District of Mississippi has ordered Defendant Heritage Inn; Pratik Patel; Pratik Amin; and anyone acting on their behalf to cease coercing, retaliating against, threatening to retaliate against, intimidating, or attempting to influence or in any way threatening employees for providing information to the Department of Labor. If any of these Defendants or anybody acting on their behalf threatens or retaliates against you for speaking to anybody at the Department of Labor, you may report that threat or retaliation to Audrey Hall, District Director of the Jackson District Office of the U.S. Department of Labor, at 601-965-7392 or Hall.Audrey@dol.gov;"

3. Defendants shall post a copy of the above statement in English in a conspicuous location at in the main office or at the front desk at the Heritage Inn Worksite and maintain the posting for the duration of Secretary's investigation and adjudication of this case.

4. Order all such other relief as may be appropriate, just, and proper.

*Id.* at 3-4.

## II. DISCUSSION

A.    Relevant Legal Authority

A temporary restraining order is a mechanism for affording relief for a limited time, when immediate and irreparable injury, loss, or damage will result to

the movant before a party can be heard in opposition. *See Esparza v. Bd. of Trustees*, 182 F.3d 915, 1999 WL 423109, \*2 (5th Cir. 1999) (citing Fed. R. Civ. P. 65(b)). Federal Rule of Civil Procedure 65 provides that the Court

> may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).

> The United States Supreme Court has explained that

> [t]he stringent restrictions imposed by [Rule 65] on the availability of ex parte temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute. Ex parte temporary restraining orders are no doubt necessary in certain circumstances, but under federal law they should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer.

*Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 438-39 (1974) (citation omitted).

For the extraordinary relief of either a temporary restraining order or a preliminary injunction to issue, the party seeking such relief "must satisfy a cumulative burden of proving each of the four elements":

> (1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury outweighs the threatened harm to the defendant; and (4) the granting of the preliminary injunction will not disserve the public interest.

6

*Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987).

B.      Analysis

Rule 65(b)(1)(B) requires "the movant's attorney [to] certif[y] in writing any efforts made to give notice and the reasons why it should not be required."  Fed. R. Civ. P. 65(b)(1)(B).  And while Plaintiff has submitted a Memorandum [3] which includes an explanation that "'proceeding ex parte is the sole method of preserving a state of affairs in which the court can provide effective final relief,'" Mem. [3] at 26 (quoting *Matter of Vuitton et Fils S.A.*, 606 F.2d 1, 4 (2d Cir. 1979)), by its terms, Rule 65 requires a separate certification by the "movant's attorney," Fed. R. Civ. P. 65(b)(1)(B).  This is so even where a Plaintiff seeks to demonstrate that notice should not be required.  *See Le v. Huynh*, No. 23-CV-914, 2023 WL 2504757, at *1 (N.D. Cal. Mar. 13, 2023) (failing to certify why notice should not be required is "fatal").  Simply put, Plaintiff's attorney must certify—in a separate writing—why there has been no attempt to serve Defendants and why no notice should be required, but they have not done so.  *See Tennessee Gas Pipeline Co., L.L.C. v. 50 Acres in Forrest Cnty., Mississippi*, No. 2:23-CV-65-HSO-BWR, 2023 WL 8452782, at *2 (S.D. Miss. May 11, 2023) (denying temporary restraining order because it "[did] not contain a writing by Plaintiff's attorney"); *Davis v. Colerain Twp.*, No 1:24-CV-56, 2024 WL 488211, at *2 (S.D. Ohio Feb. 8, 2024) ("Because Plaintiff failed to certify how this case would fall into either circumstance [those not requiring notice], ex parte relief is not appropriate."); *Vasireddy v. Mayorkas*, No. 3:21-CV-0358-S, 2021 WL 4888943, at *2 (N.D. Tex. Mar. 26, 2021) (denying

7

temporary restraining order where no certification was attached or filed as a separate exhibit); *Garcia v. Truist Bank*, No. 8:23-CV-2666-VMC-AEP, 2023 WL 9062995, at *2 (M.D. Fla. Nov. 25, 2023)(denying temporary restraining order where "Plaintiffs' counsel has not filed a separate certification as required under Rule 65(b)(1)(B)"); *cf. Esparza v. Nares*, No. 4:22-CV-03889, 2022 WL 16963998, at *4 (S.D. Tex. Nov. 16, 2022) (finding adequate a separate certification explaining that counsel "has not attempted to give [Defendant] notice of the Ex Parte Motion" and "asserts that notice should not be required").

While the allegations raised by Plaintiff are serious—and Plaintiff may ultimately be entitled to a temporary restraining order—Plaintiff must first comply with Rule 65's requirements.[1] *See Hospice Advantage, LLC v. St. Joseph Hospice, LLC*, No. 5:13-CV-56-KS-MTP, 2013 WL 12108219, at *1 (S.D. Miss. Apr. 12, 2013) (describing Rule 65's requirements as "stringent") (citing *Phillips v. Chas. Schreiner Bank*, 894 F.2d 127, 131 (5th Cir. 1990)).  Plaintiff's Ex Parte Motion [2] should be denied without prejudice.

---

[1] Plaintiff's counsel must also comply with Local Rule 83.1(d)(10), which allows attorneys representing the United States or one of its agencies, departments, or employees to appear on behalf of the United States "upon proper introduction to the Court by the United States Attorney for the district or one of the United States Attorney's assistants."  L.U. Civ. R. 83.1(d)(10).  Plaintiff has not yet met this requirement, and it does not appear that any of Plaintiff's counsel of record are licensed in Mississippi.

### III.  CONCLUSION

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Plaintiff Lori Chavez-DeRemer's Ex Parte Motion [2] for a Temporary Restraining Order and Preliminary Injunction is **DENIED WITHOUT PREJUDICE** for failure to comply with the certification requirement of Federal Rule of Civil Procedure 65(b)(1)(B).

**SO ORDERED AND ADJUDGED**, this the 2nd day of March, 2025.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
CHIEF UNITED STATES DISTRICT JUDGE